FILED
CLERK, U.S. DISTRICT COURT

07/21/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

UNITED STATES OF AMERICA,

          Plaintiff,

             v.

WESTERN DISTRIBUTION, LLC,
  aka "Advanced Distribution
      Inc.," and
CARL BRADLEY JOHANSSON,
  aka "Brad Johnson,"
  aka "Carl Johnson,"
  aka "C. Brad Johanson,"
  aka "Jay Johnson,"
  aka "Keith Golatta,"

          Defendants.

CR 5:21-cr-00170-JFW

I N D I C T M E N T

[18 U.S.C. § 1349: Conspiracy To
Commit Bank Fraud; 18 U.S.C.
§ 1344(2): Bank Fraud; 18 U.S.C.
§ 3147: Offense Committed While
On Pretrial Release; 18 U.S.C.
§ 982: Criminal Forfeiture]

The Grand Jury charges:

                    INTRODUCTORY ALLEGATIONS

     At times relevant to this Indictment:

A.   THE DEFENDANTS AND CO-CONSPIRATORS

     1.   Defendant WESTERN DISTRIBUTION, LLC, also known as

("aka") "Advanced Distribution, Inc." ("WESTERN"), was a

trucking company based in San Bernardino County, California, that was engaged in the business of transporting jet fuel.

2.    Defendant CARL BRADLEY JOHANSSON, aka "Brad Johnson," "Carl Johnson," aka "C. Brad Johanson," aka "Jay Johnson," aka "Keith Golatta" ("JOHANSSON"), controlled and operated defendant WESTERN and Co-conspirator #1.  From in or about April 2018 through July 2021, defendant JOHANSSON was on federal pretrial release due to the felony charges pending against him in United States v. National Distribution Services, Inc., et al., C.D. Cal. Case No. 5:18-CR-114(B)-VAP.

3.    Co-conspirator #1 was a trucking company based in Gustine, California, that was engaged in the business of transporting agricultural products.

4.    Co-conspirator #2 was defendant JOHANSSON's son, and the alleged owner of defendant WESTERN.

5.    Co-conspirator #3 was defendant JOHANSSON's administrative assistant for defendant WESTERN.

B.    THE PAYCHECK PROTECTION PROGRAM

6.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm due to impacts of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds to be paid as forgivable loans to small businesses for the specific purpose of paying employees, protecting their jobs, and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  PPP loan proceeds were required to

be used by applying businesses for the following purposes only: to retain workers and maintain payroll, make mortgage interest payments, make lease payments, and make utility payments.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these allowable expenses within a designated period of time (usually 24 weeks after receiving the proceeds) and used at least sixty percent of the PPP loan proceeds on worker payroll expenses.

7.   To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible for a PPP loan.  These certifications required the applicant to affirm that "The [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules.  The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

8.    In the PPP loan application, the applicant was required to state, among other things, the business's average monthly payroll expenses and number of employees.  These figures were used to calculate the amount of money the applicant business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation proving its payroll expenses, including federal tax filings and bank account records.

9.    The PPP loan application included eligibility questions relating to current and past criminal histories of any and all individuals owning twenty percent or more of the applicant company.  The application stated that any recent felony conviction or current indictment of an owner of twenty percent or more of an applicant made the applicant ineligible for PPP funding.

10.  A small business's PPP loan application would be received and processed by a participating lender approved by the United States Small Business Administration ("SBA").  If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

C.    THE SBA-APPROVED LENDERS

11.  "Bank A" was a financial institution and an SBA-approved participating lender of PPP loans based in Stockton, California, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

12.   "Bank B" was a financial institution and an SBA-approved participating lender of PPP loans based in San Francisco, California, whose deposits were insured by the FDIC.

13.   These Introductory Allegations are incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. §§ 1349, 3147]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to on or about July 21, 2021, in San Bernardino County, within the Central District of California, and elsewhere, defendants WESTERN and JOHANSSON conspired with others known and unknown to the Grand Jury, including Co-conspirators #1, #2, and #3, to execute a scheme to defraud a federally-insured financial institution, as to material matters, and to obtain moneys and funds owned by and in the custody and control of the bank by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, in violation of Title 18, United States Code, Sections 1344(1), (2).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were carried out, and were to be carried out, as follows:

1.   Under defendant JOHANSSON's direction, defendant WESTERN would apply for and obtain a PPP loan in the amount of $436,390 in April 2020, yet fail to disclose on its PPP loan application that (a) it would not comply with the PPP rules; (b) it shared common management (*i.e.*, defendant JOHANSSON) with other businesses; (c) it already had laid off most of its employees; and (d) it was not a lawfully registered limited liability company ("LLC").

1    2.   Under defendant JOHANSSON's direction, defendant

2  WESTERN would spend all of the $436,390 PPP loan by June 15,

3  2020, and most of the loan on expenses unrelated to its payroll.

4    3.   Under defendant JOHANSSON's direction, Co-conspirator

5  #1 would apply for and obtain a PPP loan in the amount of

6  $286,500 in April 2020, yet fail to disclose on the PPP loan

7  application that Co-conspirator #1 shared common management

8  (*i.e.*, defendant JOHANSSON) with other businesses.

9    4.   When defendant WESTERN's business picked back up in

10  the fall of 2020, in order to make it look as if defendant

11  WESTERN had spent most of its PPP loan on its payroll,

12  defendants WESTERN and JOHANSSON and Co-conspirator #1 would

13  cause 21 of Co-conspirator #1's employees to be placed on

14  defendant WESTERN's payroll, even though those 21 individuals

15  did not work for defendant WESTERN.

16    5.   Under defendant JOHANSSON's direction, Co-conspirator

17  #1 would reimburse defendant WESTERN for the payroll costs for

18  Co-conspirator #1's employees, even though those employees had

19  been transferred to defendant WESTERN's payroll.

20    6.   Under defendant JOHANSSON's direction, defendant

21  WESTERN and Co-conspirator #2 would submit a PPP loan

22  forgiveness application that fraudulently claimed that defendant

23  WESTERN had complied with the PPP rules, and that 21 of Co-

24  conspirator #1's employees worked for defendant WESTERN, so that

25  defendant WESTERN could meet the PPP loan-forgiveness

26  eligibility requirement that at least sixty percent of a

27  company's loan be spent on payroll.

28

7.   Under defendant JOHANSSON's direction, defendant WESTERN and Co-conspirator #2 would apply for a second PPP loan in the amount of $231,527 in March 2021, using the same fraudulent scheme whereby they falsely represented – the following: (a) that defendant WESTERN would comply with the PPP rules; (b) that defendant WESTERN did not share any common management with other businesses; (c) that defendant WESTERN was a lawfully registered LLC; and (d) that many of Co-conspirator #1's employees worked for defendant WESTERN.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants WESTERN and JOHANSSON, and others both known and unknown to the Grand Jury, including Co-conspirators #1, #2, and #3, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about April 15, 2020, Co-conspirator #1 submitted a PPP loan application ("Co-conspirator #1's PPP Loan Application") to Bank B, seeking a PPP loan in the amount of $286,505.

Overt Act No. 2:   On or about April 15, 2020, as part of Co-conspirator #1's PPP Loan Application, Co-conspirator #1 represented to Bank B that Co-conspirator #1 had no common management with any other business.

Overt Act No. 3:   On or about April 15, 2020, as part of Co-conspirator #1's PPP Loan Application, Co-conspirator #1 represented to Bank B that defendant JOHANSSON's mother owned

Co-conspirator #1 to make it appear that no owner of Co-conspirator #1 was under indictment.

Overt Act No. 4:   On or about April 24, 2020, defendant WESTERN submitted a PPP loan application ("WESTERN's PPP Loan Application") to Bank A, seeking a PPP loan in the amount of $436,390.

Overt Act No. 5:   On or about April 24, 2020, as part of defendant WESTERN's PPP Loan Application, defendant WESTERN represented to Bank A that it had the equivalent of 31 full-time employees, even though defendant WESTERN had laid off most of those employees prior to the submission of the application.

Overt Act No. 6:   On or about April 24, 2020, as part of WESTERN's PPP Loan Application, defendant WESTERN represented to Bank A that WESTERN had no common management with any other business.

Overt Act No. 7:   On or about April 24, 2020, as part of defendant WESTERN's PPP Loan Application, defendant WESTERN represented to Bank A that it was a lawfully registered LLC even though defendant JOHANSSON had caused the LLC to become defunct in or around September 2019.

Overt Act No. 8:   On or about April 24, 2020, as part of defendant WESTERN's PPP Loan Application, defendant WESTERN represented to Bank A that Co-conspirator #2 owned defendant WESTERN to make it appear that no owner of defendant WESTERN was under indictment.

Overt Act No. 9:   On or about April 24, 2020, as part of defendant WESTERN's PPP Loan Application, defendant WESTERN certified to Bank A that the PPP funds it received would be

9

"used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Rule."

Overt Act No. 10:   On or about May 5, 2020, defendant WESTERN obtained a PPP loan in the amount of $436,390 after submitting its fraudulent PPP loan application.

Overt Act No. 11:   On or about May 6, 2020, Co-conspirator #1 obtained a PPP loan in the amount of $286,500 after submitting its fraudulent PPP loan application.

Overt Act No. 12:   Between on or about May 7, 2020 and June 15, 2020, defendant WESTERN spent at least $435,000 of its PPP loan, mostly on expenses unrelated to its payroll, because the company had laid off most of its employees before it even applied for the PPP loan.

Overt Act No. 13:   On or about May 16, 2020, defendant JOHANSSON added Co-conspirator #2 to defendant WESTERN's payroll, even though defendant JOHANSSON had previously represented in the April 24, 2020 PPP loan application that Co-conspirator #2 already owned defendant WESTERN.

Overt Act No. 14:   On or about September 22, 2020, defendant JOHANSSON and Co-conspirator #1 fraudulently transferred 21 of Co-conspirator #1's employees ("Co-conspirator #1's 21 Employees") to defendant WESTERN's payroll account (effective as of on or about September 16, 2020), even though those employees continued to work for Co-conspirator #1 rather than defendant WESTERN.

Overt Act No. 15:   Between on or about September 16, 2020 and October 19, 2020, at defendant JOHANSSON's direction,

defendant WESTERN paid Co-conspirator #1's 21 Employees approximately $87,722, even though Co-conspirator #1's 21 Employees did not work for defendant WESTERN.

Overt Act No. 16:   Between in or about September 2020 through December 2020, Co-conspirator #1 wired approximately $358,287 from Co-conspirator #1's bank account to defendant WESTERN's bank account, in order to reimburse defendant WESTERN for the money that it was using to pay Co-conspirator #1's 21 Employees.

Overt Act No. 17:   On or about December 28, 2020, defendant JOHANSSON sent an email to the employee at Co-conspirator #1 who handled payroll issues, writing "[M]ake this the last week . . . go back to your own next week."

Overt Act No. 18:   On or about December 29, 2020, the employee at Co-conspirator #1 replied to defendant JOHANSSON, writing, "We will go ahead and run the weekly payroll information we gave you yesterday under the Western trucker account. . . . We will go back to everyone under the Agri-Comm Express, Inc. account next week."

Overt Act No. 19:   On or about January 19, 2021, defendant WESTERN submitted a loan forgiveness application (the "Loan Forgiveness Application") to Bank A, in which defendant WESTERN requested that its entire $436,390 loan be forgiven pursuant to the PPP rules.

Overt Act No. 20:   On or about January 19, 2021, as part of the Loan Forgiveness Application, Co-conspirator #2 certified to Bank A that "[t]he dollar amount for which forgiveness is

1  requested was used to pay costs that are eligible for
2  forgiveness."

3      Overt Act No. 21:   On or about January 19, 2021, as part
4  of the Loan Forgiveness Application, Co-conspirator #2 certified
5  to Bank A that "[t]he information provided in this application
6  and the information provided in all supporting documents and
7  forms is true and correct in all material respects."

8      Overt Act No. 22:   On or about January 29, 2021, as part
9  of the Loan Forgiveness Application, Co-conspirator #2
10 represented to Bank A that Co-conspirator #1's 21 Employees were
11 actually defendant WESTERN's employees from on or about May 5,
12 2020 to October 19, 2020, and were paid approximately $87,722 by
13 defendant WESTERN during that period, even though the 21
14 Employees did not work for defendant WESTERN and Co-conspirator
15 #1 had reimbursed defendant WESTERN for those 21 Employees'
16 payroll expenses.

17     Overt Act No. 23:   On or about February 22, 2021, Co-
18 conspirator #3 represented to Bank A that defendant WESTERN had
19 three different departments and hence three different payroll
20 journals, yet concealed from Bank A that one of those
21 "departments" actually consisted of Co-conspirator #1's 21
22 Employees.

23     Overt Act No. 24:   On or about March 24, 2021, under
24 defendant JOHANSSON's direction, defendant WESTERN applied for a
25 second PPP loan (the "Second PPP Loan Application"), also
26 through Bank A, seeking a PPP loan in the amount of $231,527.

27     Overt Act No. 25:   On or about March 24, 2021, as part of
28 the Second PPP Loan Application, Co-conspirator #2 fraudulently

represented to Bank A that defendant WESTERN had no common management with any other business.

Overt Act No. 26:   On or about March 24, 2021, as part of the Second PPP Loan Application, Co-conspirator #2 fraudulently represented to Bank A that defendant WESTERN was a lawfully registered LLC.

Overt Act No. 27:   On or about March 24, 2021, as part of the Second PPP Loan Application, Co-conspirator #2 certified to Bank A that the PPP funds that defendant WESTERN received would be "used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, [and] covered operations expenditures . . . as specified under the Paycheck Protection Program Rules."

Overt Act No. 28:   On or about March 24, 2021, as part of the Second PPP Loan Application, defendant WESTERN submitted to Bank A its purported payroll, yet failed to disclose to Bank A that many of the individuals that it had listed as its own employees were actually employed by Co-conspirator #1 rather than defendant WESTERN.

Overt Act No. 29:   On or about March 24, 2021, defendant WESTERN obtained a PPP loan in the amount of $231,527 after submitting its Second PPP Loan Application.

D.   OFFENSE COMMITTED WHILE ON PRETRIAL RELEASE

During the commission of the felony offense described above, defendant JOHANSSON was released pursuant to Title 18, United States Code, Chapter 207, in the criminal case of United States v. National Distribution Services, Inc., et al., 5:18-CR-

114(B)-VAP, in the United States District Court for the Central District of California.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1344(2), 2(b), 3147]

[ALL DEFENDANTS]

A.   THE SCHEME TO DEFRAUD

1.   Beginning no later than in or around April 2020 and continuing until at least in or around July 2021, in San Bernardino County, within the Central District of California, and elsewhere, defendants WESTERN and JOHANSSON, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Bank A by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

2.   The fraudulent scheme operated, in substance, as follows:

a.   In April 2020, defendants WESTERN and JOHANSSON submitted, and caused to be submitted, a false and fraudulent PPP loan application ("WESTERN's PPP Application") to Bank A.

b.   In defendant WESTERN's PPP Application, defendants WESTERN and JOHANSSON made, and caused to be made, false and fictitious statements and provided falsified documents to the SBA and Bank A, including concealing that defendant WESTERN shared common management with other companies, concealing that defendant WESTERN was not a lawfully registered LLC, and falsely certifying that the loan would be used for permissible PPP purposes.

c.   Defendants WESTERN and JOHANSSON electronically submitted, and caused to be submitted, the false and fictitious statements to the SBA and financial institution in support of the fraudulent PPP Loan Application to obtain a PPP loan that they did not intend to spend on payroll as required.

d.   In reliance on defendants WESTERN's and JOHANSSON's materially false and fraudulent statements and their concealment of material facts, Bank A approved and funded the PPP loan, and thereafter transferred approximately $436,390 in loan proceeds by interstate wire into bank accounts that defendants WESTERN and JOHANSSON controlled.

e.   Defendants WESTERN and JOHANSSON used the fraudulently obtained PPP loan proceeds for their own benefit, among other things, rather than ensuring that most of defendant WESTERN's employees would not be laid off.

f.   Defendants WESTERN and JOHANSSON submitted, and caused to be submitted, a false and fraudulent PPP loan forgiveness application (the "Loan Forgiveness Application") to Bank A on behalf of defendant WESTERN.

g.   In the Loan Forgiveness Application, defendants WESTERN and JOHANSSON made, and caused to be made, false and fictitious statements to the SBA and Bank A, including inflating defendant Western's payroll expenses by listing employees who did not work for defendant WESTERN, and falsely certifying that the loan had been used for permissible PPP purposes.

h.   Defendants WESTERN and JOHANSSON electronically submitted, and caused to be submitted, the false and fictitious statements to the SBA and Bank A in support of the fraudulent

Loan Forgiveness Application to obtain the forgiveness of the PPP loan that they had not spent on defendant WESTERN's payroll as required.

i.   In March 2021, defendants WESTERN and JOHANSSON submitted, and caused to be submitted, a second false and fraudulent PPP loan application (the "Second PPP Loan Application") to Bank A on behalf of defendant WESTERN.

j.   In the Second PPP Loan Application, defendants WESTERN and JOHANSSON made, and caused to be made, false and fictitious statements and provided falsified documents to the SBA and Bank A, including inflating the number of defendant WESTERN's employees, concealing the fact that defendant WESTERN shared common management with other companies, concealing the fact that defendant WESTERN was not a lawfully registered LLC, and falsely certifying that the loan would be used for permissible business purposes.

k.   Defendants WESTERN and JOHANSSON electronically submitted, and caused to be submitted, the false and fictitious statements to the SBA and financial institution in support of the fraudulent Second PPP Loan Application to obtain a PPP loan that they did not intend to spend as they had represented to Bank A.

l.   In reliance on defendants WESTERN's and JOHANSSON's material false and fraudulent statements and their concealment of material facts, Bank A approved and funded the Second PPP Loan Application, and thereafter transferred approximately $231,527 in loan proceeds by interstate wire into bank accounts that defendants WESTERN and JOHANSSON controlled.

B.   <u>EXECUTIONS OF THE SCHEME</u>

    3.   On or about the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendants WESTERN and JOHANSSON committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|-------|------|-----|
| TWO | 4/24/2020 | Submission to Bank A of defendant WESTERN's first PPP loan application |
| THREE | 1/19/2021 | Submission to Bank A of defendant WESTERN's loan forgiveness application for its first PPP loan |
| FOUR | 3/24/2021 | Submission to Bank A of defendant WESTERN's second PPP loan application |

C.   OFFENSES COMMITTED WHILE ON PRETRIAL RELEASE

    During the commission of the felony offenses described above, defendant JOHANSSON was released pursuant to Title 18, United States Code, Chapter 207, in the criminal case of United States v. National Distribution Services, Inc., et al., 5:18-CR-114(B)-VAP, in the United States District Court for the Central District of California.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of defendants' conviction of the offenses set forth in any of Counts One through Four of this Indictment.

2.   The defendants so convicted shall forfeit to the United States of America the following:

a.   $436,390 in funds obtained on or about May 5, 2020 as part of defendants WESTERN and JOHANSSON's PPP loan application;

b.   $286,500 in funds obtained on or about May 6, 2020 as part of defendant JOHANSSON and Co-conspirator #1's PPP loan application;

c.   $231,527 in funds obtained on or about March 24, 2021 as part of defendants WESTERN and JOHANSSON's second PPP loan application;

d.   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

e.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the defendants so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_____/S/_____
Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

MARK A. WILLIAMS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

JOSEPH O. JOHNS
Assistant United States Attorney
Environmental and Community
Safety Crimes Section

MATTHEW W. O'BRIEN
Assistant United States Attorney
Environmental and Community
Safety Crimes Section