**EDWARD M. ROBINSON (CA Bar 216244)**
Brian A. Robinson (CA Bar 333650)
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendants
*Carl Bradley Johansson,*
*National Distribution, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL DISTRIBUTION, INC., et al.<br><br>　　　　Defendant. | Case No. 5:18-00114-VAP<br>Case No. 5:21-00170-VAP<br><br>**DEFENDANTS CARL BRADLEY JOHANSSON'S AND NATIONAL DISTRIBUTION, INC.'S. POSITION WITH RESPECT TO SENTENCING; EXHIBITS IN SUPPORT; EXHIBIT A UNDER SEAL**<br><br>DATE: November 28, 2022<br>TIME: 10:00 a.m.<br>Courtroom of the<br>Honorable Virginia A. Phillips |

　　Defendants Carl Bradley Johansson and National Distribution, Inc., by and through their attorneys of record Edward M. Robinson and Brian Robinson, hereby file their position with respect to sentencing.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ADVISORY GUIDELINE CALCULATION ........................................................... 2

18 U.S.C. § 3553 FACTORS ..................................................................................... 2

    I.    Personal History and Characteristics ................................................... 4

    II.   Just Punishment and Deterrence .......................................................... 5

    III.  Most Effective Form of Treatment ...................................................... 7

CONCLUSION ........................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*
 552 U.S. 38 (2007)...........................................................................................................5

*Tapia v. United States*
 564 U.S. 319 (2011).........................................................................................................6

*United States v. Collington*
 461 F.3d 805 (6th Cir. 2006)............................................................................................7

**Statutes**

18 U.S.C. § 3553..................................................................................................................passim

U.S.S.G. § 2Q1.2 ..........................................................................................................................2

U.S.S.G. § 3B1.1...........................................................................................................................2

**Other Authorities**

David Weisburd et. al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar
 Crimes, 33 Criminology 587 (1995) ................................................................................5

U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY
 COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (2004) ..............................6

**INTRODUCTION**

Mr. Johansson takes issue with the government's description of him and his conduct as set forth in the introduction to its Objections to the Presentence Report and Sentencing Memorandum. (Doc. 345) As set forth in Mr. Johansson's motion to withdraw his guilty plea to counts 1 and 2 in case no. 18-cr-00114-VAP, (hereinafter referred to as "case 114"), Mr. Johansson asserts his innocence as to the conduct involving the "R" stamp, failure to purge, and obstructive behavior. He also asserts his innocence as to his knowledge and responsibility for the explosion that occurred at the business in September 2012. He objects to the government's claim that he refused to buy basic safety equipment, and most importantly, he objects to the claim that he ordered his two welders on May 6, 2014, to conduct welding on a tanker without having purged the tank of the flammable materials inside. (See Motion to Withdraw Plea.)

It is these allegations as well as the claim that Mr. Johansson obstructed the investigation concerning the cause of these explosions that primarily drive the government's request for a significant upward variance from the advisory sentencing guideline range to a term of 10 years in prison. A ten-year sentence, given the nature and circumstances of the offense, and more critically Mr. Johansson's personal history and characteristics, is significantly greater than necessary to protect the public from future crimes of Mr. Johansson, to specifically deter him from future criminal activity, to reflect the seriousness of his conduct, and to provide for just punishment.

For these reasons, as set forth herein, Mr. Johansson asks that this Court sentence him to a term of 57 months based on a total offense level of 24, criminal history category II. (PSR ¶¶ 90-123.)

//
//
//

1

## ADVISORY GUIDELINE CALCULATION

Mr. Johansson agrees with the advisory guideline calculations set forth in the Presentence Report at paragraphs 90 to 123.

Mr. Johansson opposes the government's request for a 9-level upward adjustment under U.S.S.G. § 2Q1.2(b)(2). Mr. Johansson's opposition to the government's request is tied directly to his assertion of innocence with respect to counts 1 and 2 in case no. 18-cr-00114-VAP. For the reasons set forth in his motion to withdraw his plea as to those counts, Mr. Johansson takes the position that he did not order any welding to be done on a tanker that had not been purged and that the "R" stamp conduct was not done at his direction and, despite that, may not have been the type of work that required an "R" stamp.

Mr. Johansson also objects to the government's request for a 4-level upward role adjustment for his involvement in the "PPP fraud." Specifically, Mr. Johansson objects to the government's use of organizational defendants Western Distribution and Agri-Comm as participants for the purpose of calculating an upward role adjustment. Clearly the government believes that these two entities were alter egos of Mr. Johansson. The same applies to "C.S.J.", Mr. Johansson's son, and Mr. Johansson's wife. As the government bears the burden of establishing that these co-participants were organized or led by Mr. Johansson, which they cannot be by their status as mere straw entities, the government cannot claim that they should be counted as a "participant" for the purpose of the application of U.S.S.G. § 3B1.1(a).

## 18 U.S.C. § 3553 FACTORS

As the Court is well aware, 18 U.S.C. §3553(a) sets forth the congressional mandate that a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to promote the factors of sentencing set forth in the statute. It is against the backdrop of the nature and circumstances of the offense and the personal history and characteristics that the court is to determine what type of sentence of incarceration is necessary to protect the public, promote respect for the law, provide just punishment,

reflect the seriousness of the offense, and provide both general and individual deterrence. The most important factor of sentencing that a court must consider is how much prison time is necessary to protect the public. Concomitant with that factor is the question of how much time in custody is necessary to deter Mr. Johansson from reoffending, i.e., creating further danger.

In cases where physical and mental illness are part of a defendant's personal history and characteristics and have an effect on the nature and circumstances of the offense, the court is required to consider the most effective means of treating those defects and whether it is more effective to treat the defendant in an out of custody setting as opposed to a prison. (18 U.S.C. § 3553(a)(2)(D).)

The government in their position paints Mr. Johansson as a dangerous recidivist who did not care about the safety of his employees. As set forth in this position paper, and more explicitly the motion to withdraw the pleas to counts 1 and 2, Mr. Johansson vigorously objects to the government's position. Not only did Mr. Johansson and the businesses have safety protocols in place and safety equipment made available to employees, their safety record over 30-years, despite the anecdotal position of the government, was consistent with and surpassed some of the more well-known carriers of hazardous materials. (See Exhibit B.)

The government takes the position that because Mr. Johansson did not pay his personal income tax and that he used his income to rent a house for his family and pay tuition for his children, he is overtly indifferent to his social responsibility and the plight of the less fortunate. Mr. Johansson is not seeking to withdraw his plea of guilty to the tax violation or to the bank fraud. While those two classes of crimes can be considered as categorical evidence of an intent to steal and an indifference towards others, Mr. Johansson respectfully requests that this court consider his personal history and characteristics as it relates to his mental and physical health.

Mr. Johansson's psychological condition coupled with his age and his significant decline in physical health make it highly unlikely, if not impossible, that he will ever

engage in this type of business again. Mr. Johansson has absolutely no desire to do so as well. With that in mind, Mr. Johansson asks this Court to consider his mental illness, his physical illness, and the nature of his incarceration during this pandemic. He has suffered greatly in his incarceration, and he has been punished significantly already. He is certainly not asking for an immediate release; he recognizes that additional incarceration is warranted. Counsel for Mr. Johansson asks that this Court invoke the parsimony clause of 3553 and determine that a sentence of 57-months is sufficient, but not greater than necessary, to protect the public, to deter Mr. Johansson, to provide just punishment, and promote respect for the law. What Mr. Johansson really needs is a long term of supervision so that he can be monitored by the Probation Department and pursuant to this Court's order, be the beneficiary of intensive supervision which includes treatment for his psychological condition in the most effective way.

## I. Personal History and Characteristics

Dr. Paul Lane met with Mr. Johansson in MDCLA on three separate occasions to conduct a psychological evaluation of Mr. Johansson. On October 31, Dr. Lane produced his report. (Attached hereto as Exhibit A).[1] Dr. Lane's report provides vital insight into Mr. Johansson's personal history and characteristics.

After conducting the clinical assessment and interviews of Mr. Johansson, Dr. Lane concluded that Mr. Johansson "likely has a history of Bipolar II Disorder, hypomanic type, as well as a Phobic Disorder (claustrophobia) with post-traumatic sequelae and intermittent alcohol abuse." (*Id*. at p. 16.) Dr. Lane also concluded that Mr. Johansson is currently "suffering from a Bipolar II Disorder, depressed type, along with claustrophobia and associated high levels of anxiety with intermittent panic attacks." (*Id*. at p. 17.) It is Dr. Lanes opinion that Mr. Johansson's "psychological condition played a role in his poor judgment and criminal behavior in the past." (*Id*.)

---

[1] Exhibit A is filed under seal.

Mr. Johansson's undiagnosed psychological conditions are "quite treatable" if Mr. Johansson is able to receive the appropriate treatment, i.e., "psychotropic medication and evidence-based cognitive behavioral psychological treatment." (*Id*.) If Mr. Johansson is able to receive such treatment, "the likelihood of recidivism will be significantly reduced[.]" (*Id*.) Most notably, after conducting multiple tests to determine whether Mr. Johansson was malingering, Dr. Lane concluded that Mr. Johansson was not. (*Id*.)

## II. Just Punishment and Deterrence

The requirement that a sentence promote respect for the law and provide just punishment is tied directly to who Mr. Johansson is per the mandate of 18 U.S.C. § 3553(a)(1). As the United States Supreme Court said in *Gall v. United States*, 552 U.S. 38, 54 (2007), "a sentence of imprisonment may work to promote not respect but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

Here, as set forth in more detail in Mr. Johansson and National's Motion to Withdraw Guilty Pleas, the government's request for a 120-month sentence is premised on an exaggerated and, at times, false characterization of Mr. Johansson and the offense conduct. As such, to sentence Mr. Johansson to a term longer than 57-months would be unjustifiably and unreasonably harsh.

18 U.S.C. § 3553(a)(2)(B) requires the Court to consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. While this Court must consider both general and individual deterrence, two very important examinations of the concepts of deterrence must be considered. First, the anecdotal notion that longer sentences have a greater general deterrent effect is belied by empirical and academic findings. In a study involving federal white-collar defendants, there was no difference in deterrence found between sentences of probation and imprisonment. See David Weisburd et. al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995). Second, and most importantly, the United

States Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high Guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." See U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 15 (2004). To sentence Mr. Johansson to a term of imprisonment greater than 57-months to deter the community is unnecessary and wrong.

18 U.S.C. § 3553(a)(2)(C) requires this Court to consider the need for the sentence imposed to protect the public from further crimes of Mr. Johansson. The need to protect the public from further crimes of Mr. Johansson is easily measured. The Sentencing Commission has engaged in empirical studies concerning what factors affect recidivism generally. These factors include, among other things, age, employment, education, family support, abstinence from drug and alcohol use, and the nonviolent nature of the offense. See U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (May 2004). The Commission in its study found that "recidivism rates decline relatively consistently as age increases [and defendants] over the age of 40 ... exhibit markedly lower rates of recidivism in comparison to younger defendants."

Mr. Johansson is a 64-year-old, highly educated man who has maintained steady employment since his childhood, has strong support from his friends and family, has no history of drug abuse, and this is a non-violent offense. (See Exhibit A.) Moreover, due to Mr. Johansson's age, declining mental and physical health, and tarnished reputation, he will never work in this industry again. As set forth in Dr. Lane's report, if Mr. Johansson "receives appropriate treatment in the future, the likelihood of recidivism will be significantly reduced[.]" (*Id.*, p. 17.)

### III. Most Effective Form of Treatment

18 U.S.C. § 3553(a)(2)(D) requires this Court to consider the need for the sentence imposed to provide Mr. Johansson with the needed medical care in the most effective manner. This section provides the rehabilitative function of the sentencing statute. *Tapia v. United States*, 564 U.S. 319, 325 (2011). Mr. Johansson has significant physical and mental health problems, as set forth in the Presentence Report and in Dr. Lane's report. (PSR ¶¶ 149-156; see also Exhibit A.) Mr. Johansson clearly needs psychological treatment. His claustrophobia, anxiety, and depression can be tied directly to the trauma he suffered from his abusive uncle. In the case of *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006), the Circuit upheld a significant variance based upon the defendant's need for psychological treatment due to the fact that the defendant's father was murdered when the defendant was nine and his mother died two years later. In addition to his mental health problems, Mr. Johansson suffers from severe physical ailments including asthma, chronic obstructive pulmonary disease, diplopia, migraine headaches, vertigo, high blood pressure and high cholesterol, and atrial fibrillation. (Exhibit A at p. 7.) Incarcerating Mr. Johansson beyond 57-months will deprive him of the medical and psychological treatment that he needs which can be provided in the most effective manner through intense supervision with stringent mental health treatment conditions.

# CONCLUSION

If this Court is not inclined to grant Mr. Johansson and National's pending Motion to Withdraw Guilty Pleas, Mr. Johansson requests that he be sentenced to a term of 57-months in prison with intensive supervision to follow including treatment for his mental illness. Counsel for National requests that this Court impose the sentence recommended by the Probation Office in Doc. #.

If this Court is inclined to grant Mr. Johansson and National's Motion to Withdraw Guilty Pleas, Mr. Johansson requests that sentencing on the remaining counts be continued to a date set by the Court.

Respectfully submitted,

DATED:  November 4, 2022         By  */s/ Edward M. Robinson*
                                     Edward M. Robinson
                                     Brian A. Robinson

                                     Attorneys for Defendant
                                     *Carl Bradley Johansson*